## EUTHA G. THOMAS *v.* PENNSYLVANIA RAILROAD COMPANY.

[No. 52, January Term, 1932.]

*Decided May 11th, 1932.*

The cause was argued before BOND, C J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Richard E. Preece* and *Edward Pierson,* with whom was *Leon H. A. Pierson* on the brief, for the appellant.

*Rowland K. Adams,* with whom were *Adams & Hargest* on the brief, for the appellee.

Bond, C. J., delivered the opinion of the Court.

The question principally argued in this case is whether compensation is allowable for the accidental death of a railroad freight conductor under the Workmen's Compensation Act of Maryland, rather than under the Federal Employers' Liability Act (45 U. S. Code Ann., secs. 51-59). Another question has arisen, in this case and another, from the offers by the claimants, on the appeals below, of oral testimony, notwithstanding the provision of the Acts of 1931, ch. 406 (Code, art. 101, sec. 56), that questions of fact should be tried on the record of the original proceedings before the State Industrial Accident Commission, or upon a stipulation of the parties on the facts.

The evidence in this case was all in agreement on the facts, and the finding of the commission in accordance with those facts is, on appeal, to be taken as correct in the absence of any proof to the contrary. Section 56. The testimony was that Howard Franklin Thomas, husband of the claimant, was employed by the Pennsylvania Railroad Company as a freight conductor, working in the Highland Yards in Baltimore City. On May 27th, 1930, he received an order from the assistant yardmaster to supply a broom factory, that of the Atlantic Southwestern Broom Company, two especially dry cars for shipments of brooms to Brooklyn, New York, and Newark, New Jersey. Thomas was directed to take an engine and bring fourteen cars from a track by the Philadelphia Pike, and bring them all down, so that two suitable cars might be selected and placed on the broom company's siding for the shipments. He and his engineer examined each of the fourteen cars at the Philadelphia Pike, and chose the third and last in the string. They then brought the fourteen cars down the yard, cut out the two selected, one by one, placed them on what is called a south track, and placed the remaining twelve on a No. 2 track. Then they were going back to the south track, to put the selected cars on the broom company's siding, when Thomas received the injuries which resulted in his death. Upon this evidence the State Industrial Accident Commission disallowed the

claim under the Maryland Workmen's Compensation Act, and the claimant entered an appeal to the Baltimore City Court. Upon that appeal, the claimant elected to have the questions of fact involved submitted to a jury. Issues prepared for answers by the jury presented questions of law as much as of fact, and were not adapted for the guidance of a jury. The questions were: Whether the commission erred in finding that the injury was not compensable under the Maryland act, whether it erred in finding that it was without jurisdiction of the claim, and whether at the time of injury Thomas was engaged in intrastate commerce. *Gold Dust Corp. v. Zabawa*, 159 Md. 664, 669, 152 A. 500; *Baltimore Publishing Co. v. Hendricks*, 156 Md. 74, 79, 143 A. 654. But, as the court disposed of the questions by rulings on the law, no difficulty resulted from the scope of the issues.

At the opening of the trial on the appeal below, an offer was made on behalf of the claimant to produce oral testimony from the witnesses who had testified before the commission, and the exclusion of the additional testimony by the trial court, in accordance with the Act of 1931, ch. 406, forms the subject of the first exception. The act was passed subsequently to the disposition of the case before the commission, which was on November 26th, 1930, and the appeal, too, had been entered on November 28th, 1930. The act became effective on June 1st, 1931, and the hearing or trial before the Baltimore City Court took place later, in September of 1931. The appellant denies the propriety of construing the act to have a retrospective operation, so that it should apply to prevent the production of the witnesses again on an appeal which had been taken before the passage of the act and the date of its effectiveness. And the argument is based on the principles that the Legislature must, if the language and operation of the statute permit it, be presumed to have intended not to cut off rights already attached, by removing grounds of pending appeals, or changing the existing procedure to the disadvantage of litigants, and in workmen's compensation cases not to depart from the liberal attitude

required to accomplish the purposes of the Workmen's Compensation Act. *Dryden v. Baltimore Trust Co.,* 157 Md. 559, 563, 146 A. 752; *Bartlett v. Ligon,* 135 Md. 620, 626, 109 A. 473; *Grove v. Todd,* 41 Md. 633, 641; *Grinder v. Nelson,* 9 Gill, 299; *Frazier v. Leas,* 127 Md. 572, 575, 96 A. 764. But we see no escape from construing the restriction to apply to the previous appeals. The enactment is that "the court shall, from the record made before the commission (or upon any stipulation of the facts * * *), determine whether the commission has exceeded the powers granted it * * * and whether it has misconstrued the law and facts applicable in the case decided as disclosed by the record aforesaid or such stipulation." The words are comprehensive and admit of no exception. They constitute the only provision for appeal now in force, the former provision having been repealed in the enactment of this one, without any saving clause respecting existing appeals; and the appellant can have only the existing law applied to govern her appeal. *Madigan v. Workingmen's Bldg. Assn.,* 73 Md. 317, 321, 20 A. 1069; *Elliott v. Elliott,* 38 Md. 357, 361; *Southerland v. Norris,* 74 Md. 326, 328, 22 A. 137; *State v. Jones,* 21 Md. 432, 438. The law as it now stands gives a right to the restricted use of the jury, or to no use of the jury at all.

We do not understand the appellant to question the constitutionality of applying the restriction retrospectively, but the appellee has argued in anticipation of such an objection, and since the argument in this case the court has heard argument in another case, at the succeeding term of court (*Celanese Corporation v. Lease,* 162 Md. 587, 160 A. 801), on a question of constitutionality in restricting review by a jury in any proceeding to evidence not taken before them. On the objection that a retrospective operation is unconstitutional, it is to be observed that it deprives the appellant of no property or rights in an existing contract, and no right of action or ground of recovery. She is not denied the benefit of proof of the facts. The provision is merely procedural, designating the source or repository of the evidence on the

facts for the jury's review. *Grove v. Todd,* 41 Md. 633, 641; *Grinder v. Nelson,* 9 Gill, 299; *Bartlett v. Ligon,* 135 Md. 620, 109 A. 473. It is to be presumed that ordinarily the commission before which a claim is made has the supporting facts laid before it. The system calls for the facts to be laid before it, and they must be laid before it if the machinery devised is to be permitted to do the work assigned to it. In some other jurisdictions it has been regarded as unreasonable and unfair to permit the introduction of additional evidence on an appeal from the commission. *Poccardi v. Ott,* 82 W. Va. 497, 96 S. E. 790. And, in the exercise of the peculiar function committed to courts under the provision included in the Maryland act, that of determining in a proceeding in the nature of an appeal whether the commission has exceeded the powers granted it by the article, and whether it has misconstrued the law and the facts applicable in the cases decided, it is surely not illogical that the review should be confined to the facts which the commission has construed. Such is the practice in some of the other states. In nearly half of the state acts in this country and in federal acts, finality is given to findings of the commissions on facts. *Southwestern Surety Ins. Co. v. Pillsbury,* 172 Cal. 768, 158 P. 762; *Pace v. Appanoose County,* 184 Iowa, 498, 168 N. W. 916; *Bates & Rogers Co. v. Allen,* 183 Ky. 815, 210 S. W. 467; *Ridge Coal Co. v. Industrial Commission,* 298 Ill. 532, 131 N. E. 637; *Davis v. Smith,* 262 Pa. 432, 105 A. 559.

And taking up the objection to use of the jury with a restriction as to the source of the evidence to be reviewed, an objection which, now that it has been raised, must be considered before it can be decided whether the ruling in this present case was right or wrong, it is settled for us at the start that, in this special, peculiar, proceeding before the court, which the Legislature has devised, it is not required by the Constitution that any jury at all shall be allowed. The Legislature is free to shape the proceeding without giving an option to the use of a jury on the facts. *Branch v. Indemnity Ins. Co.,* 156 Md. 482, 489, 144 A. 696. It is

conceded, indeed, that here, too, no review of facts need be allowed, that a right of review might be given on the law only, as in the familiar instance of appeals from rulings of the State Tax Commission. Code, art. 81, sec. 253; *Fidelity Trust Co. v. Gorman,* 134 Md. 332, 106 A. 847; *Industrial Corp. v. State Tax Commn.,* 134 Md. 379, 106 A. 852; *State Tax Commn. v. Baltimore County,* 138 Md. 668, 672, 114 A. 717. Other instances of appeals so limited are mentioned in the opinions in those cases. In the recent case of *Crowell v. Benson,* before the Supreme Court of the United States, 285 U. S. 22, 52 S. Ct. 285, 291, 76 L. Ed. 369, the opinion, by the Chief Justice, considering the finality given to a commissioner's finding on the facts under the Longshoremen's and Harbor Workers' Compensation Act (33 U. S. Code Ann., secs. 901-950), said there could be no doubt of the intention that it should be final, and that, "to hold otherwise would be to defeat the obvious purpose of the legislation to furnish a prompt, continuous, expert, and inexpensive method for dealing with a class of questions of fact which are peculiarly suited to examination and determination by an administrative agency specially assigned to that task. * * * The use of the administrative method for these purposes, assuming due notice, proper opportunity to be heard, and that findings are based upon evidence, falls easily within the principle of the decisions sustaining similar procedure against objections under the due process clauses of the Fifth and Fourteenth Amendments." Here the Legislature has allowed more than this minimum; there is a review allowed on the facts, by the court, or, if either party should demand it, then by a jury. And the objection now is to this voluntary use of the jury for the limited purpose of reviewing the testimony before the commission. It is an objection that a jury cannot be used in any other than the familiar, customary manner, that it cannot be used for the purposes of a pure appeal, but can be used only in a proceeding *de novo.*

There is no constitutional provision which prescribes a single method of informing twelve men of the facts on which their judgment is to be taken. If there is any obstacle to

the method which the Legislature has decided upon in this present statute, it must apparently be found in custom only. We must say that custom permits a jury to be made use of in only the one way, and we must elevate the custom into a constitutional restraint upon the lawmaking power. Is it clear, in the first place, that custom fixes such a narrow character and utility on any twelve men called to serve as a tribunal? And, if it does, what is there to give the custom greater force than an act of assembly, such that, while the Constitution does not require any jury at all, custom serves to forbid the utilization of twelve men within limits which the Legislature finds to be desirable? The uses regularly made of juries are in fact varied. Without considering those of the earlier common law, and the methods then followed to inform the jury of the facts (*Thayer, Preliminary Treatise on Evidence,* 90-136), we have illustrations in Maryland of latitude in using them. In criminal cases they are judges of both law and facts. *Const.* art. 15, sec. 5. In the more familiar civil proceedings they are confined to evidence produced before them for their information on the facts, while in condemnation cases they are to be informed not only by that evidence but by their own investigation and knowledge as well. *Tide Water Canal Co. v. Archer,* 9 G. & J. 479, 489; *Compton v. Susquehanna R. Co.,* 3 Bland, 386, 389, 390; *Consolidated Gas Co. v. Baltimore,* 105 Md. 43, 53, 65 A. 628; *Baltimore v. Hurlock,* 113 Md. 674, 684, 78 A. 558. In Maryland there are juries to serve in proceedings before sheriffs, such as upon a writ *de lunatico inquirendo.* And it is a familiar fact that in the past juries have been used to aid sheriffs and other officers in ascertaining what property was left by decedents, and what was liable to escheat, in surveys of estates of minors and resurveys of land in ejectment proceedings. *Kilty, Landholder's Assistant,* 174, 184, 217; *Shaw v. Lynes,* 1 H. & McH. 16, 18, and note; 2 *Poe, Pl. & Pr.,* sec. 470. Juries are commonly permitted to render verdicts on agreed statements of fact. In this present act there is a provision that their information as to the facts may be derived from a stipulation, and there is no objection that this is a per-

version of the uses of a jury. All this seems to show that custom permits some latitude in the use of laymen as a tribunal. And, if custom so far has not contemplated use of the jury for the review desired under this act, we see nothing to restrain the Legislature from enlarging the custom. So long as the option to use a jury is entirely a matter of the Legislature's volition, the Constitution not requiring it, there seems to be no reason why, in the exercise of that freedom, and in the extending of that privilege, it should not provide as much or as little function for the jury as it finds desirable, or allow the limited use as well as the use which is made familiar in ordinary common-law proceedings.

The court has been referred to two decisions in the State of Ohio that a statutory provision, confining the jury, allowed on an appeal under a Workmen's Compensation Act, to the record of the commission, is invalid. *Industrial Commission v. Hilshorst,* 117 Ohio St. 337, 158 N. E. 748, and *Industrial Commission v. Sylva,* 30 Ohio App. 208, 162 N. E. 777. The ground of decision in the first was that the provision was repugnant to other provisions in the act, and must fall for that reason, but the later case in the intermediate court seems to have placed the decision on unconstitutionality of the provision. The reasoning which was thought to require that conclusion is not given. The point is not argued. We can only say that the reasons stated in this opinion seem to this court to require the other conclusion.

Even if the restriction of the jury to the record could be held unconstitutional, there might still remain a question of difficulty to be disposed of before it could be determined that a privilege of producing new testimony before the jury existed. As has been noticed earlier in this opinion, the restricted review by the jury is all that the Legislature has now allowed; the unrestricted review has been stopped by the repeal of the provision of the old law which permitted it. Invalidation of a restricting part of a provision does not install the shorn remnant as the law, for the Legislature has not so enacted. "Where an excepting provision in a statute is found unconstitutional, courts very generally hold that

this does not work an enlargement of the scope or operation of other provisions with which that provision was enacted and which it was intended to qualify or restrain." *Davis v. Wallace,* 257 U. S. 478, 484, 42 S. Ct. 164, 166, 66 L. Ed. ,325. "It is by a mere figure of speech that we say an unconstitutional provision of a statute is 'stricken out.' For all the purposes of construction it is to be regarded as part of the act. The meaning of the Legislature must be gathered from all they have said, as well from that which is ineffective for want of power, as from that which is authorized by law." *State v. Dombaugh,* 20 Ohio St. 167, 174. If the restricted use of the jury should be invalid, it might be questioned whether any review by a jury would be available except by way of invalidation of the whole act of 1931, leaving the previous act unrepealed and in force as expressing the intention of the former Legislature which enacted it. But the question need not be considered further if the qualifying or restricting clause here is found valid. And this court does find that it is valid. No error is found in the ruling made the subject of the first exception in the case now before the court.

The second exception, that upon which the question of the interstate or intrasate character of the work being done by the deceased arises, was to an instruction given to the jury that the work was in interstate commerce, and therefore compensation was not allowable under the state act. The general guiding principles for distinguishing between work of the one description and the other, within the meaning of the law, have been fully discussed in the recent case of *Boyer v. Pennsylvania Railroad Co.,* 162 Md. 328, 159 A. 909, at the January term of court, and repetition is unnecessary. The distinction, when both kinds of work are carried on by the same employees in the same yards, must frequently be narrow and difficult to draw. But, in the several decided cases in which the work being done at the time of injury has been substantially the same as that being done by Thomas at the moment, moving or going to move to the place of loading cars assigned for interstate transportation, there appears to be general agreement among courts of the country that the

injury is to be classed as one sustained in interstate commerce. Many somewhat similar cases may be found reviewed in the notes to the *United States Code Annotated,* title 45, pp. 148 to 153. In *Moyer v. Pennsylvania R. Co.,* 247 Pa. 210, 93 A. 282, this classification was given to an injury sustained in shifting a car to a yard where it would later be loaded with an interstate shipment. Another injury in shifting a car for interstate loading was so classified in *Christy v. Wabash R. Co.,* 195 Mo. App. 232, 191 S. W. 241. And in *Jeneary v. Chicago & Interurban Traction Co.,* 225 Ill. App. 122, affirmed in 306 Ill. 392, 138 N. E. 203, two empty cars were being shifted to a factory for an interstate loading, as in this case, and an injury which occurred then was likewise held to be one sustained in interstate commerce. The same conclusion on similar facts had been previously announced in *Chicago Junction R. Co. v. Industrial Board,* 277 Ill. 512, 115 N. E. 647. And see *Jarvis v. Chic., B. & Q. R. Co.* (1931), 327 Mo. 428, 37 S. W. (2nd) 602. And in the present case, even without the confirmation afforded by the decisions cited, we could not avoid the conclusion that a workman engaged in procuring and placing cars to receive and carry interstate shipments was engaged in interstate commerce as defined in the authorities. The entire task seems to have been only the first part of an interstate undertaking. We see no error in the ruling made the subject of the second exception.

*Judgment affirmed, with costs.*

---

OFFUTT, J., filed a dissenting opinion as follows, in which DIGGES, J., concurred.

The majority opinion in this case decides that on appeals from decisions of the State Industrial Accident Commission of Maryland no evidence can be considered other than that contained in the record. In so much of the opinion as states that conclusion, I am unable to concur for the reasons: (1) That as I see it, that result cannot be reached except by

reading into the act by judicial amendment words which the Legislature omitted, and (2) that when so amended the terms of the act under consideration become so inconsistent and conflicting as to be void for uncertainty. Chapter 800 of the Acts of 1914 provided that upon such an appeal the court should "((from the record made before the Commission or upon any stipulation of the facts which may be agreed to and signed by the parties and filed with such appeal)) determine whether the Commission * * * has exceeded the powers granted it by the Act, whether it has misconstrued the law and facts applicable in the case decided ((as disclosed by the record aforesaid or such stipulation)). If the Court shall determine that the Commission has acted within its powers and has correctly construed the law and facts, the decision of the Commission shall be confirmed, otherwise it shall be reversed or modified. Upon the hearing of such an appeal the Court shall, upon motion of either party filed with the Clerk of the Court according to the practice in civil cases, submit to a jury any question of fact ((disclosed by such record or stipulation)) involved in such case." That particular part of the section (section 55) remained unchanged until the Acts of 1931 (chapter 406) which amended it by adding to it the words inclosed in double brackets in the above quotation. Appellants contend that the effect of that amendment is to limit juries sworn on issues in appeals from the commission to a consideration of the evidence and only the evidence taken before the commission. The appellee contends that the amendment is unconstitutional, (1) because it denies to litigants in such cases the right of trial by jury, (2) and it delegates judicial powers to an administrative body. There is, however, a third theory, which is that the purpose of the act was not to limit the right of the jury to consider evidence, but to restrict it to a consideration of the issues tried before the commission.

The purpose and design of the entire law of which that section is an important part was to provide for every workman, disabled in the course of an extra-hazardous employment as the result of an accident arising out of the same, the

means to live during his disability, and in the event of his death reasonable compensation to his dependents. The relief which it extended to those entitled to its benefits was not large, but it was intended to be fairly adequate, prompt and certain. It is also manifest from its preamble and from the structure of the entire act that the Legislature intended that its administration should be simple and informal, in order that those entitled to compensation under it should receive it with the least possible delay and at the least possible expense. It was recognized that in many cases claimants would, through want or inexperience, be unable to employ counsel, or themselves conduct a proceeding which required technical knowledge, special skill, or experience. The machinery set up by the act was for that reason intended to provide a procedure so simple and plain that claimants would be able with the aid of the commission to themselves present their claims, in the assurance that they would receive all the benefit which the act intended they should have. To that end it provided that it shall be presumed, in the absence of substantial evidence to the contrary, that a claim filed under it comes within the provisions of the act (Code, art. 101, sec. 64), that the article is to be interpreted to effectuate its general purpose (section 63), that the commission is not to be bound by rules of evidence, or any technical or formal procedure, but is to make its investigation in such manner as is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the act (section 10), that it is authorized to adopt rules of procedure but must make them as "summary and simple as reasonably may be" (section 9), and that it is required to prepare and furnish free of cost blank forms needed for the several steps needed to complete the course of a claim for compensation under the act (section 12).

Notwithstanding its clear and simple mandates, as the result of more than one hundred cases in which its provisions have been construed by this court, a substantial body of substantive and procedural law relating to it has come into existence, with a growing tendency to make the administra-

tion of the act more technical and the relief it was intended to give less certain. When, therefore, its provisions come under review, they should be considered, not only in the light of that result, but also in connection with the legislative injunction that the article be so interpreted and construed as to effectuate its general purpose.

Coming to the precise point in issue here, the first objection to the constitutionality of the act is that it deprives the claimant of the right to trial by jury. That objection may be considered under several heads: (1) That it is a right secured by article 15, sec. 6 of the Constitution of Maryland; (2) that to limit the power of the court to admit or consider evidence constitutes an unwarranted encroachment on the powers of the judicial department or the state government (Maryland Declaration of Rights, art. 8); (3) that, if construed as so limiting the power of the court, the act is so inconsistent in its terms as to be void for uncertainty.

Whether the claimant is entitled to a trial by jury under article 15, section 6, of the Constitution of this state, is not free from doubt. The cases of *Frazier v. Leas,* 127 Md. 576, 96 A. 764, 766, and *Solvuca v. Ryan & Reilly Co.,* 131 Md. 281, 101 A. 710, appear to recognize the right of litigants proceeding under the act to a jury trial by virtue of article 15, section 6, of the state constitution, but in *Branch v. Indemnity Ins. Co.,* 156 Md. 487, 144 A. 696, 697, a different conclusion was reached, apparently upon the authority of *State v. Clausen,* 65 Wash. 156, 117 P. 1101, and *Mountain Timber Co. v. State of Washington,* 243 U. S. 219, 37 S. Ct. 260, 61 L. Ed. 685, and a statement in 28 *R. C. L.* 744 depending largely upon those cases and *State v. Mountain Timber Co.,* 75 Wash. 581, 135 P. 645. But in *State v. Clausen, supra,* not only was the constitutional provision under review narrower than that in question here, but one of the judges who sat in the case in a concurring opinion expressed the view that the opinion did not finally decide whether the Legislature, in the absence of a constitutional amendment, could dispense with a jury trial in such cases. In *Mountain Timber Co. v. State of Washington, supra,*

where the application of the Seventh Amendment of the federal constitution was in issue, it was held that the Legislature had not only the right to dispense with a jury trial, but that it could also dispense with any judicial review of the acts of the commission. However, in view of the fact that this court alone has been called upon to review the decisions of the commission of this state in over one hundred cases, and that over sixty official opinions have been filed by the several attorney generals of the state since 1915 upon the powers and duties of the commission, it cannot well be said that it does not exercise judicial powers, or that it would not constitute a court unless its acts were in some way subject to judicial review. It was held in *Solvuca v. Ryan, supra,* that it was not a court and did not exercise judicial power in a constitutional sense, but the act, then as now, did provide for a judicial review, and it does not follow that an act which failed to provide for such a review would be upheld, although it may be said that since *Frazier v. Leas, supra,* and *Solvuca v. Ryan & Reilly, supra,* there has been apparently a decided change in the attitude of courts generally towards constitutional mandates and prohibitions, and that constructions of such provisions which would not have been accepted by the judges of that period are accepted today as a matter of course. For that reason the older precedents have lost much of their force, and are either set aside or softened by judicious, though artificial, tenuous, constructions. In the *Mountain Timber Co. v. State of Washington* case, reported in 243 U. S. 219, 37 S. Ct. 260, 264, 61 L. Ed. 685, where the court was dealing with the application of the Seventh Amendment to the Federal Constitution, which does not affect state action, it was said: "As between employee and employer, the act abolishes all right of recovery in ordinary cases, and therefore leaves nothing to be tried by jury." But to that comment there are two obvious answers (1) that in this state the act does provide for a trial by jury, and there must therefore be something to be tried by a jury, and (2) that, while the act does take away valuable rights and privileges, it does give in their place other rights and priv-

ileges just as real, just as substantial, and in a broad sense more valuable.

In *Branch v. Indemnity Ins. Co., supra,* it was said, in referring to *Solvuca v. Ryan & Reilly Co., supra,* and *Frazier v. Leas, supra,* that: "As the statute actually provided for jury trials, it was not necessary to consider and determine, in either of the cases cited, whether the act would be invalid in the absence of such a provision," but that comment was quite as applicable to the case in which it was made, for there, too, the act provided for a jury trial.

The only point involved in *Branch v. Indemnity Ins. Co.* was whether an employer who had been required to pay compensation by a decision of the commission was entitled to a stay until an appeal from that decision had been heard. So that the reasoning in that case led as certainly to the conclusion that the appellant was not entitled to an appeal at all, as it did to the conclusion that on an appeal he was not entitled to a jury trial.

A majority of the court in this case are of the opinion that at least *Branch v. Indemnity Ins. Co., supra,* conclusively determines that the parties to litigation before the commission are not entitled to a jury trial under the Maryland Constitution, which leads to the second question, that the act delegates judicial powers to a mere administrative commission. That question was considered in *Solvuca v. Ryan & Reilly, supra,* and there it was held that it had no such effect, and, unless there has been some fundamental change in the statute since that time, that decision should be binding. But the only change in the statute which affects the question is that under consideration, and, since it has been established by *Branch v. Indemnity Ins. Co., supra,* that no jury trial at all is necessary, it follows that a mere limitation of the questions which the jury may consider is not sufficient to cast a doubt upon the present binding force of *Solvuca v. Ryan & Reilly.*

Assuming the constitutionality of the act, the remaining question is its meaning. Upon comparing it with the statute in force at the time *Frazier v. Leas, supra,* was decided, it

will be found that one of the two changes effected by the amendment is to add to the words "the court shall," occurring in the first sentence of section 56, the words "from the record made before the Commission (or upon any stipulation of the facts which may be agreed to and signed by the parties and filed with such appeal)." The provision for a jury trial which occurs in another and later sentence is unchanged, and identical with the statute as it was when considered in *Frazier v. Leas, supra,* except for the words inclosed in double brackets, and provides that upon hearing the court shall on motion submit to a jury any question of fact ((disclosed by such record or stipulation)) involved in such case.

That is to say, the act of 1931 does provide that the court shall submit to a jury any question of fact, which is equivalent to any issue of fact, but it limits the issues to be so submitted to those disclosed by the record. It contains no reference of any kind to the evidence which may be offered in connection with those issues, and to give it the effect of limiting the jury to a consideration of the record or stipulation, it would be necessary to put into the act by legislative enactment, as was done in Ohio, 109 Ohio Laws, p. 296, or by judicial construction, as we are asked to do here, the additional words "nor shall either party upon such appeal, be permitted to offer any evidence other than that contained in such record or stipulation."

It will be noted that the only change made by the act in the language considered in *Frazier v. Leas, supra,* is to add to the words "any question of fact" the qualifying words "disclosed by such record or stipulation," and that the following language, used by Judge Burke in that case, is quite as applicable to the Act of 1931 as to the Act of 1914: "There is no provision in the act which attempts to confine or limit the trial to the testimony taken before the Commission. Section 55 makes no mention of that testimony, nor is there any statement in the act as to its admissibility or legal effect on appeal. It may be that in some cases the question of the jurisdiction could be determined without recourse to evidence outside the record. The proceedings may disclose a want of

jurisdiction. In other cases the defect of jurisdiction may depend upon some fact to be established at the trial. Unless this defect be apparent upon the face of the proceedings, how can the presumption in favor of the jurisdiction be overcome, if the party appealing be denied the right to establish the facts showing want of jurisdiction? Has he not a clear right to offer any pertinent and relevant evidence upon any question of fact submitted to the jury? If not we might have the unheard of situation of a trial by jury in which one of the parties was held bound by evidence which he disputed, and denied the right to offer evidence in his own behalf. Trial by juries implies the right of either party to the cause to call witnesses to support his case. The granting to one a right of trial by jury, and then to deny him the right to introduce witnesses in support of his case, would be like the play of Hamlet with Hamlet left out. We have never heard of a case in which this right was denied, and we do not suppose the Legislature intended to introduce such a novel procedure."

If the contention of appellants is correct, it would not only be necessary to vitally amend the act by judicial construction, but to amend it in such a way as to destroy any benefit from the right of trial by jury which the Legislature intended to give. For it is unlikely that an appellant in such a case would be benefited, or that the purpose of the act would be furthered, by merely constituting a jury a board of review to pass upon the identical evidence before the commission. It is possible, and it frequently happens, as it did in this case, that the claimant, without counsel, inexperienced, possibly still suffering from the effects of disability or disease, fails at the hearing before the commission to prove vital facts, or that facts not available at such hearing will later come to the attention of the employer or insurer which may control the final disposition of the case. The evident purpose of the section under review was to permit the court on appeal to consider all available evidence in order that there might be there a just and final determination of the case. It has been suggested that either party might apply for a rehearing

before the commission to offer additional evidence, and for some purposes that is true. *Bethlehem Corp. v. Simmons,* 143 Md. 509, 122 A. 678. But, having in mind the purpose of the act, it cannot be reasonably assumed that the Legislature intended that the parties should be tossed to and from between the commission and the court to settle an issue which the court might dispose of at once and finally. To state, as the act does, that there shall be a jury trial of any issue of fact presented by the record, and then to say that at such trial the parties may offer no evidence not before the commission is to grant a right and take it away at the same time, for the two statements are in irreconcilable conflict. The only issue which the jury could try would be one of fact, but a jury trial of an issue of fact at which the parties are denied the right to prove the facts by any and all available and admissible evidence is no jury trial at all. *Industrial Commission v. Sylva,* 30 Ohio App. 208, 162 N. E. 777; *Industrial Commission v. Hilshorst,* 117 Ohio St. 337, 158 N. E. 748. It may well be that the commission might reject material and relevant evidence, and yet, although the purpose of the appeal must be to correct errors, the construction given the act by the majority opinion would take from the court any power to do that in such a case, since the rejected evidence would not be in the record and it could not hear it on appeal.

It is true that the statute provides that the "court" shall from the record made before the commission determine whether the commission exceeded its powers, or misconstrued the law and facts, but the functions of the court sitting as an appellate tribunal to review questions of law, and the court sitting as a jury or the jury to determine issues of facts, are essentially different. And in the act the provision for a jury trial does not occur in the sentence which refers to functions and duties of the court, but in a different sentence, which begins after that which deals with the powers and functions of the court has been completed.

If the Legislature had intended that the limitation which applies to the court should also apply to the jury, it could

have said that, but, instead of saying that the jury should determine from the record whether the commission had erred in its finding on any issue of fact found therein, it provided that the jury should determine the issues of fact found in the record, and it referred to the record to limit the number of issues which the jury might consider, and not to limit the evidence that might be considered in connection with them.

---

PARKE, J., filed the following opinion:

I concur in the dissent of Judge Offutt. The construction given in the dissent prevents, in my judgment, the amendment of the statute from being unconstitutional. The question at bar was not the one decided in *Branch v. Indemnity Ins. Co.,* 156 Md. 487, 144 A. 696. While it is true the opinion in that case supports the majority view on this appeal, yet the language of that opinion is broader than the point for decision, and so the court should not be concluded by a statement which was not required for the decision, and comprehended a subject-matter to which the mind of the court was not necessarily addressed. It is a grave departure from precedent and authority to hold that a jury trial, as known to the common law, is no longer an indispensable prerequisite to the constitutionality of the Workmen's Compensation Law. *Frazier v. Leas,* 127 Md. 576, 96 A. 764; *Solvuca v. Ryan & Reilly Co.,* 131 Md. 281, 101 A. 710.